**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G. A. Leusch,<br><br>       Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner<br>of Social Security Administration,<br><br>       Defendant. | No. CV18-1042-PHX-DGC<br><br>**ORDER** |

Plaintiff G.A. Leusch seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For the following reasons, the Court will vacate the Commissioner's decision and remand for an award of benefits.

## I. Background.

Plaintiff is a 55-year-old man with a ninth-grade education. A.R. 48. He previously worked as a cabinet maker. A.R. 60. Plaintiff applied for disability benefits on September 24, 2013, alleging disability beginning June 20, 2012. A.R. 21. On October 7, 2015, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing before the ALJ. A.R. 42-69. On June 1, 2016, Plaintiff, a VE, and a medical expert ("ME") appeared before the ALJ at a supplemental hearing. A.R. 99-127. On September 28, 2016, the ALJ issued an unfavorable decision, finding Plaintiff was not

disabled within the meaning of the Social Security Act. A.R. 21-34. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 13, 2018. A.R. 1-7.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the whole record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Sequential Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step

two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014, and that he had not engaged in substantial gainful activity since June 20, 2012. A.R. 24. At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome status post left release; history of left cubital tunnel syndrome status post decompression; lumbar spine spondylosis; and cervical spine spondylosis, status post fusion. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* At step four, the ALJ determined that Plaintiff had the RFC to perform medium work and that:

> the claimant can lift and/or carry fifty pounds occasionally, twenty-five pounds frequently; . . . has no limitation with regard to sitting with normal breaks; . . . can stand or walk for six hours with normal breaks; [and] can frequently finger with the dominant left upper extremity.

A.R. 24. The ALJ concluded that Plaintiff could perform his past relevant work as a cabinet maker, and that he was not disabled within the meaning of the Social Security Act from June 20, 2012 through September 28, 2016.[1] *Id.* at 34.

**IV. Discussion.**

Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ erred in rejecting assessments by Plaintiff's two treating physicians, Dr. Kearney and Dr. Amrani, and giving great weight to the non-examining ME, Dr. Schmitter; and (2) the ALJ rejected Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence. Doc. 14 at 18, 25.

**A. Medical Opinion Evidence.**

**1. Legal Standard.**

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by

---

[1] Plaintiff was previously found not disabled on June 19, 2012. A.R. 21; A.R. 128-50. The ALJ in Plaintiff's current case found that Plaintiff rebutted the presumption of continuing nondisability and proved changed circumstances material to the disability determination. The ALJ therefore gave no preclusive effect to the prior findings. A.R. 21-22.

substantial evidence in the record for so doing." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

"The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. John Kearney.

The ALJ gave Dr. Kearny's opinion little weight. A.R. 32. Because Dr. Kearney is a treating physician whose opinion is contradicted by another doctor, the ALJ could discount his opinion by giving specific and legitimate reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830.

### a. Opinion.

On May 29, 2015, Dr. Kearney completed a check-box form indicating that Plaintiff had moderately severe pain which seriously affected his ability to function and prohibited him from working. A.R. 846-47. He opined that Plaintiff had the following impairments: carpal tunnel syndrome, cubital tunnel syndrome, cervical radiculopathy, and lumbar radiculopathy. *Id.*[2] In an eight-hour work day, Dr. Kearney opined that Plaintiff could sit for six hours; stand and walk 2-3 hours; lift and carry 10-15 pounds; never use his left hand; frequently use his right hand; occasionally use his feet, bend, reach, stoop, and balance; and never crawl, climb, crouch, or kneel. *Id.*

On September 23, 2015, Dr. Kearney completed another form indicating that Plaintiff had right and left carpal tunnel syndrome. A.R. 896-97. He opined that Plaintiff could sit for six hours; stand and walk for six hours; lift 15-20 pounds; carry 20-30 pounds;

---

[2] The fourth impairment, beginning with "cervical", is illegible. *See* A.R. 846.

use his hands less than occasionally; and that these restrictions were present as of June 20, 2012. *Id.* On October 2, 2015, Dr. Kearney responded to questions about his previous opinion, stating that he treats Plaintiff only for hand conditions and that Plaintiff's condition would require 10-15 minute breaks after periods of using his hands. A.R. 898.

The ALJ identified two reasons for giving the opinions little weight: (1) Plaintiff's medical records did not support the severity of limitations assessed by Dr. Kearney; and (2) Dr. Kearney is a board-certified sports and family medicine, nonsurgical practitioner. A.R. 32.

### b.    First Reason.

With respect to his first reason, the ALJ stated that physical examinations revealed negative Tinel's and Phalen's tests on the left hand, a negative Spurling's test on the left, and normal ulnar and radial sensation on the left. A.R. 32. The ALJ cited one exhibit for this proposition, which includes medical records from two visits at the same treatment facility. A.R. 1018-24. The first visit was on September 23, 2015 with Dr. Kearney. A.R. 1021-24. Plaintiff reported a pain level of 9 in both hands, and Dr. Kearney noted numbness, tingling, joint swelling, and stiffness. A.R. 1021. Dr. Kearney diagnosed Plaintiff with radiculopathy in the cervicothoracic region and assessed left carpal tunnel syndrome, and stated that Plaintiff "still clearly seem[ed] to be symptomatic from a component of recalcitrant carpal tunnel syndrome." Dr. Kearney wanted Plaintiff to follow up regarding hand surgery. A.R. 1023. The second visit was a month later on November 4, 2015. Plaintiff reported a pain level of 5 in his left hand and that his pain was dull, aching, and worsening. A.R. 1018-19. Without further explanation, the notes state, "LUE: + Durkan's, – Tinel's at wrist, – Phalen's, + Tinel's at elbow, + elbow flexion test, – Spurling's, decreased sensation in median/ulnar/radial distributions." A.R. 1019. The assessment also states:

> Because of conflicting evidence, it is not clear if . . . symptoms are due to nerve problems originating at the wrist and elbow or in the neck. I do not know if revision CTR and ulnar nerve transposition will help . . . . He will go ahead with the nerve stimulator test and see if this helps him.

*Id.*

Plaintiff argues that the ALJ's cited medical records support rather than contradict Dr. Kearney's opinion about his limitations. Doc. 14 at 21. Plaintiff cites Dr. Kearney's September conclusion that he remained symptomatic and the November examination showing a positive Durkan's test at Plaintiff's left upper extremity, positive Tinel's sign at the elbow, and decreased sensation in the median, ulnar, and radial distributions. *Id.* at 21-22 (citing A.R. 1019-23).

The ALJ failed to explain why the cited examination results contradicted Dr. Kearney's assessment, even though one of the examinations was conducted by Dr. Kearney and consistent with his opinions about Plaintiff's limitations, and the second was only a month later at the same facility and remained consistent with Plaintiff's reported pain and symptoms. It is true that the November examination only pertained to Plaintiff's right hand and showed negative Tinel's, Phalen's, and Spurling's results. A.R. 1019. But the examination also yielded positive Durkan's, Tinel's at the elbow, elbow flexion, and showed decreased sensation in Plaintiff's left median, ulnar, and radial distributions. *Id.* The ALJ cited no evidence explaining the significance of these findings. And he failed to state his interpretation of the mixed results, why his interpretation was correct and Dr. Kearney's incorrect, and why his interpretation rendered Dr. Kearney's assessment unsupported. Although the ALJ set out a thorough discussion of the record (A.R. 27-33), he failed to make specific findings about evidence supporting or contradicting Dr. Kearney's opinion and his interpretation of the evidence. *See Magallanes*, 881 F.2d at 751.

### b. Second Reason.

The ALJ's second reason for discrediting Dr. Kearney's opinion was that Dr. Kearney was board-certified in sports and family medicine and was not a surgical practitioner. A.R. 32. The ALJ noted that the ME was board-certified in orthopedic surgery. A.R. 30-31. Defendant does not seem to defend this rationale. *See* Doc. 18 at 17-19.

While specialization in the relevant field is a factor in determining a medical opinion's weight, it is not controlling. *See* 20 C.F.R. § 404.1527(c)(5). The ALJ should consider the "kinds and extent of examinations and testing the [treating] source has performed or ordered from specialists and independent laboratories." § 404.1527(c)(2)(ii). Board certification was not required for Dr. Kearney to offer an opinion on Plaintiff's condition, and the ALJ could not discredit Dr. Kearney's opinion for this reason alone, with no discussion of the examinations and tests on which Dr. Kearney relied. *Sprague v. Bowen*, 812 F.2d 1126, 1231-32 (9th Cir. 1987).

### 3. Dr. Jacob Amrani.

The ALJ gave Dr. Amrani's opinion little weight. A.R. 32-33. Because Dr. Amrani is a treating physician whose opinion is contradicted by another doctor, the ALJ could discount his opinion only for specific and legitimate reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830.

#### a. Opinion.

In October 2015, Dr. Amrani completed a check-box form indicating that Plaintiff's spinal-related impairments precluded his working an eight-hour day. A.R. 899-900. He opined that Plaintiff could sit for six hours; stand and walk for two hours; lift and carry less than ten pounds; continuously use his feet, bend, reach, stoop; and frequently use his hands. Dr. Amrani opined that it was medically necessary for Plaintiff to alternate between sitting, standing, and walking, and to rest 1-4 minutes between position changes. A.R. 899. He further opined that Plaintiff had moderate pain which would cause him to be off task 11-15% of an eight-hour day and miss 2-3 days of work each month. A.R. 900.

The ALJ gave three reasons for discrediting Dr. Amrani's opinion: (1) Plaintiff's "relatively normal findings" after his cervical fusion surgery did not support it; (2) Dr. Amrani reported "relatively benign findings" and referred Plaintiff to pain management;

and (3) Plaintiff used marijuana as a method of pain relief and testified inconsistently about whether it was medical marijuana. A.R. 32-33.[3]

### b. First Reason.

As to his first reason, the ALJ specifically stated that "[a]lthough physical examinations revealed tenderness of the cervical and lumbosacral spine, [Plaintiff] had full range of motion, no tenderness of the occipital protuberance, a negative straight leg raising test, normal gait and normal reflexes." A.R. 33 (citing A.R. 983-1013). Plaintiff argues that his physical examinations consistently revealed positive objective findings after his failed cervical surgery. Doc. 14 at 22. Plaintiff cites examinations that show limited and painful cervical and lumbar motion; tenderness on palpation of the cervical and lumbar spine; tenderness to the occipitals; abnormal and decreased sensation in Plaintiff's bilateral hands; positive bilateral straight leg raise testing; and a limp. *Id.* (citing A.R. 843-44, 850-51, 854, 869, 882-82, 985, 993, 1000, 1012-14).

Medical evidence in the record is mixed. The results of a June 2012 lumbar spine MRI reveal mild to moderate disc bulges at L1-2, L2-3, and L4-5, and mild and moderate stenosis at L2-3, L3-4, and L4-5. A.R. 558-59. November 2013 treatment notes indicate that physical therapy did not change Plaintiff's neck and back pain; normal spine inspection; mild limitations in range of motion; some pain in maneuvering; but no abnormal neurological findings; normal gait; ability to heel- and toe-walk; severe disc degeneration at L1-2; and no significant areas of stenosis. The treatment notes state that "as always [Plaintiff] ask[ed] for escalation [of pain medication]." A.R. 586-88.

In 2014, Plaintiff underwent four spinal branch blocks (A.R. 735, 740, 808-09, 811-12, 798-99), four ablation procedures (A.R. 798-99, 795-96, 788-89, 781-82), and three nerve block procedures (A.R. 778, 780, 776). *See* Doc. 14 at 9-10. March 2015 treatment notes reflect ongoing cervical disc displacement and bulging and lumbar spinal

---

[3] The ALJ also stated that Plaintiff reported daily living activities that are compatible with competitive work. The Court will consider this reason in determining whether the ALJ properly discredited Plaintiff's symptom testimony.

stenosis; herniated discs at C4-6 and C5-6; and decreased sensation, but also no lumbar spine tenderness to palpation; normal gait and no limp; and 5/5 strength for lower extremities. A.R. 978-80. After Plaintiff's pain continued, Dr. Amrani performed spinal fusion surgery on Plaintiff in April 2015. A.R. 834.

May 2015 treatment notes reflect that Plaintiff continued to complain of neck and back pain and note limited and painful range of cervical spinal motion, but the examinations also showed negative and nonpainful results for maneuvering tests; full scores on neurological exam strength testing; and normal inspection of the cervical and lumbar lordosis. A.R. 835, 843-44.

July 2015 treatment notes reflect full cervical spine range of motion; full lumbosacral spine range of motion; negative straight-leg raising test; normal gait; but also tenderness on palpation of the cervical and lumbosacral spine. A.R. 850-51.

A July 2015 MRI of the cervical spine revealed mild to moderate degenerative joint disease at C1-C2; a 1-mm broad disc bulge at C3-C4 and no stenosis; a 3-mm broad disc bulge at C4-C5 with mild stenosis; a 2-mm broad disc bulge at C5-C6 and mild stenosis; a 3-mm broad disc bulge at C6-C7 with mild and moderate stenosis; and a 3-mm bilobed disc bulge at C7-T1. A.R. 871-72. The findings were stable and unchanged from previous examinations. A.R. 872. August 2015 treatment notes continue to reflect mixed results and Plaintiff's ongoing reported pain. A.R. 875-84.

In January 2016, Plaintiff had a spinal cord stimulator trial device removed due to lack of effectiveness in relieving his pain. A.R. 991-94. March 2016 treatment reflect full range of motion in cervical and lumbosacral spine; negative straight-leg raising test; normal gait and stance; normal deep tendon reflexes; no lower extremity weakness; occipital protuberance was tender on palpation but no cervical spine tenderness; lumbosacral spine tenderness on palpation at L2-5; and Plaintiff received a trigger point injection for pain. A.R. 983-86.

The ALJ generally concluded that the record did not support Dr. Amrani's opinion. He also agreed with two of the ME's specific conclusions. The ME found that Plaintiff's

cervical fusion was unlikely to produce an improved outcome because Plaintiff had no neurologic deficits prior to the surgery. This is not a specific and legitimate reason for discrediting Dr. Amrani. Whether the ME agreed with Dr. Amrani's method of treatment is irrelevant to the ALJ's weighing and interpretation of the evidence. The ALJ also agreed with the ME's conclusion that the record did not support Dr. Amrani's opinion that Plaintiff could only stand and walk for two hours. A.R. 119;31-33.

Although the ALJ discussed much of the evidence in the record, he impermissibly isolated only one finding out of Plaintiff's nearly four-year medical history as discrediting Dr. Amrani's opinion. A.R. 33. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ's cited exhibit contains treatment notes from September 2015 through March 2016. But as discussed above, that period includes mixed results about Plaintiff's conditions, about which the ALJ made no specific interpretations. Given Plaintiff's four-year history of reported pain, MRI testing, examinations, nerve blocks, nerve ablations, spinal injections, a spinal fusion, and referrals to pain management specialists, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Amrani's treating opinion and crediting the opinion of the non-examining ME. The ALJ's general assertion that objective evidence did not support Dr. Amrani's opinion is insufficient. *Embrey*, 849 F.2d at 421-22.

What is more, the ME diagnosed Plaintiff with chronic cervical pain and chronic low back pain, finding Plaintiff could sit for an unlimited period of time with breaks; walk and stand for 6-8 hours; and lift and carry 50 pounds occasionally and 25 frequently. A.R. 30, 902-904. Based on the same record, Dr. Amrani concluded that Plaintiff could only sit for six hours; stand and walk for two hours; and lift and carry less than ten pounds. The ALJ's only stated reason for crediting the ME over Dr. Amrani was the "decreased findings with regard to [Plaintiff's] spine following cervical fusion surgery." A.R. 31. But as discussed above, the findings after Plaintiff's surgery are mixed. ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ . . . reject[ed]

the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor."); *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (reiterating that "[t]he ALJ must set forth his own interpretations and explain why they, rather than the doctors', are correct"); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). And the Court cannot affirm the ALJ's opinion simply by isolating a "specific quantum of supporting evidence" out of a mixed and complex record, about which the ALJ failed to make comprehensive, specific, and legitimate findings. *Orn*, 495 F.3d at 630.

### c.     Second and Third Reasons.

As his second reason, the ALJ stated that Dr. Amrani's opinion was unsupported because, although he is a board-certified orthopedic surgeon and performed Plaintiff's cervical fusion, Dr. Amrani reported benign findings and referred Plaintiff to pain management. A.R. 33 (citing A.R. 864-74). The ALJ's cited exhibit includes June and August 2015 treatment notes and Plaintiff's July 2015 MRI results. The ALJ did not explain why Dr. Amrani's referral of Plaintiff to pain management discredits his opinion that Plaintiff's pain and conditions prevent him from working through an eight-hour day and require him to alternate between positions, among other restrictions. *See* A.R. 899-900. Nor did the ALJ provide any basis for crediting his interpretation of the MRI results over Dr. Amrani's. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert"); *cf. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (an ALJ may not substitute his layperson observations for opinions of claimant's treating physicians). And Defendant offers no clarification. *See* Doc. 18 at 17-19. This is not a specific and legitimate reason for discrediting Dr. Amrani.

For a third reason, the ALJ noted that Plaintiff attended pain management but used marijuana as a method of pain relief. A.R. 33. The ALJ also noted that Plaintiff

inconsistently testified about whether it was medical marijuana. *Id.* The ALJ did not explain why Plaintiff's use of marijuana to treat his pain, medical or not, discredited Dr. Amrani's treating assessment of the evidence and opinion about Plaintiff's limitations. And the ALJ did not cite any evidence showing that Dr. Amrani's opinion was based on Plaintiff's self-reports rather than clinical evidence such that Plaintiff's own credibility could undercut Dr. Amrani's. *See Ghanim*, 763 F.3d at 1162. This is not a specific and legitimate reason for discrediting Dr. Amrani's treating opinion. *Cf. Kelly v. Berryhill*, 732 Fed. App'x. 558, 564 (9th Cir. 2018) ("[W]hile we have no binding precedent on whether medical marijuana use may be a legitimate ground for an adverse credibility finding, we have previously expressed skepticism at the idea. . . . [T]he ALJ's reliance on [Plaintiff's] medical marijuana use to discredit him was improper. . ." (citation omitted)).

### B. Evaluation of Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.*

Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted).

Plaintiff testified that he experiences constant pain and pressure in his neck and back, most severely in his lower back. A.R. 49-50. He testified that he feels the pain throughout his legs and numbness from his knees down to his feet, which is exacerbated by walking too much or being on his feet. A.R. 50. Plaintiff also experiences neck pain,

which causes headaches and radiates pain through his left shoulder, arm, and hand. A.R. 51. Walking, turning his head, or looking up and down exacerbate his neck pain. A.R. 52. Plaintiff testified that aspirin does not give him pain relief, and that sometimes he needs to lie down from the headache pain. A.R. 52-53. He lays down daily, sometimes more than once a day, and will nap for around two hours total. A.R. 53. Plaintiff testified that the neck fusion surgery and injections did not provide lasting pain relief. A.R. 54. In his left hand, Plaintiff sometimes feels burning but mostly numbness. A.R. 51-52. He continues to have pain in both hands, including numbness, aching, joint pain, difficulty closing his hands, grabbing, and holding, but his left hand is worse. A.R. 55.

Plaintiff testified that he only helps around the home a little, doing laundry once a week, maybe helping with dishes, retrieving the mail once a day, and driving his girlfriend's kids to school a few days a week. A.R. 56. He testified that if he starts to do chores, he can only do an activity for about ten minutes before needing to rest. A.R. 57. Plaintiff testified that he watches television but cannot engage in his former hobbies due to his pain. A.R. 59. Plaintiff testified that he can stand for 15-20 minutes, sit for an hour, and walk about 100 yards before needing to rest. A.R. 60-61. He testified that he can lift about ten pounds. A.R. 61. Plaintiff estimated that he sleeps about two hours a night because of his pain. *Id.*

The ALJ found that Plaintiff's symptom testimony was inconsistent with his daily activities and the medical evidence.[4] A.R. 26.

### 1. Inconsistency with Plaintiff's Daily Activities.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112-13. "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the

---

[4] Defendant asserts that the ALJ also listed conservative treatment as a reason for discrediting Plaintiff's testimony. Doc. 18 at 13. But the ALJ stated no such reason. The portion of the decision to which Defendant cites was merely part of the ALJ's recounting of Plaintiff's testimony and is portrayed out of context.

claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted).

The ALJ found:

> Although the claimant's activities of daily living are quite limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. The claimant indicated he could perform some household chores, prepare simple meals, drive a vehicle, is social with family and friends and can occasionally shop . . . . The claimant's ability to participate in such activities does not support the claimant's allegations of disabling functional limitations.

A.R. 26.

The ALJ made no finding that Plaintiff was malingering, and he "did not elaborate on which daily activities conflict[ed] with which part of [Plaintiff's] testimony." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Rather, the ALJ summarized Plaintiff's testimony about his daily activities and followed his conclusion of inconsistency with a five-page discussion of the record, without stating specific reasons for his finding. *See* A.R. 27-31; *Burrell*, 775 F.3d at 1137 ("The ALJ's decision then drifts into a discussion of the medical evidence; it provides no reasons for the credibility determination.").

Defendant concedes that "the activities discussed [by the ALJ] do not necessarily indicate Plaintiff's ability to perform work activities," but asserts that they are sufficiently inconsistent to permit the ALJ's adverse credibility determination. Doc. 18 at 14. Without explaining how Plaintiff's activities are inconsistent with his testimony, and perhaps noting the ALJ's lack of explanation, Defendant asks the Court to infer from the decision what he found inconsistent and unreliable and to "discern the ALJ's path." Doc. 18 at 15-16. The Court cannot do so.

Plaintiff gave testimony about two distinct bases for disability: his neck and back conditions and related pain, and his hand and wrist conditions and related pain. Plaintiff testified to different aggravating factors and limitations related to each basis, and he testified to daily activities with various physical requirements, ranging from sitting and speaking with family and friends, to light household chores with frequent breaks, to short-distance driving. The ALJ provided no explanation of how any of these activities corresponded to or were inconsistent with his alleged conditions and symptoms. Although the Court may draw reasonable inferences from an ALJ's opinion, the Court "may not take a general finding – an unspecified conflict between [Plaintiff's] testimony about daily activities and [his symptom testimony] – and comb the administrative record to find specific conflicts." *Burrell*, 775 F.3d at 1138.

As the Ninth Circuit has repeatedly noted, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer." *Garrison*, 759 F.3d at 1016 (citation omitted). For this reason, ALJs must identify what specific testimony is not credible based on specific facts in the record. *Lester*, 81 F.3d at 834; *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). The ALJ failed to provide such specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony based on inconsistency with his daily activities.

### 2. Symptom Testimony Unsupported by the Record.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*,

367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [he] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

### a. Hand and Wrist Pain.

Citing Plaintiff's September and November 2015 examinations, the ALJ stated that Plaintiff's "recent medical records support a finding of only mild to moderate carpal tunnel syndrome in the left upper extremity." A.R. 26. The Court finds that these two examinations out of Plaintiff's four-year medical history are insufficient to provide a clear and convincing reason to discredit his symptom testimony, especially given that neither examination tested Plaintiff's right hand.

### b. Neck and Back Pain.

Regarding Plaintiff's symptom testimony about his neck and back pain, the ALJ stated:

> The claimant's recent medical records document some positive objective findings regarding the claimant's spine following cervical spinal fusion surgery in April 2015. Although physical examinations revealed tenderness of the cervical and lumbosacral spine, the claimant had full range of motion, and no tenderness of the occipital protuberance. He had a negative straight leg raising test, normal gait and normal reflexes. (Ex. B26F).

A.R. 26. The ALJ cited one set of medical records in this paragraph – Ex. B26F – without identifying specific pages, and concluded that these findings were inconsistent with Plaintiff's testimony that he had to lay down for two hours a day, could not stand or walk for more than 20 minutes at a time, could not lift more than ten pounds, and could not perform chores for more than ten minutes.

The ALJ again appears to have isolated limited evidence to support his finding that Plaintiff's pain testimony is not credible. The single set of medical records cited by the ALJ includes a report by Plaintiff that his pain level is 8 on a scale of 10 when he takes medication and level 10 when he does not. A.R. 985. He reported that his pain is worse when walking, standing, and sitting, and is relieved by rest. A.R. 983. Plaintiff reported that he had completed a spinal cord stimulator trial for his cervical pain, which did not provide adequate relief. A.R. 984. Plaintiff received trigger point injections during the office visit. A.R. 986. Given this record, and Plaintiff's four-year history of reported pain, MRI testing, examinations, nerve blocks, nerve ablations, spinal injections, a spinal fusion, and referrals to pain management specialists, the Court cannot conclude that the ALJ provided specific, clear, and convincing reasons to discounting Plaintiff's pain testimony.

The ALJ's error was not harmless. The VE testified that Plaintiff's claimed symptoms and limitations, if true, would preclude the performance of his past work or other work. A.R. 67.

## V. Scope of Remand.

The ALJ erred in discrediting the opinions of Drs. Kearney and Armani and Plaintiff's symptom testimony. Plaintiff contends that, crediting this evidence as true, the

Court must remand for an award of benefits. Doc. 14 at 30. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 18 at 21.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

## A.    Hand and Wrist Conditions.

With respect to Plaintiff's hand and wrist condition, the Court finds reason to doubt whether Plaintiff is disabled.

Dr. Kearney opined that Plaintiff could use his hands never, less than 20% of the time, or less than occasionally. *See* A.R. 27-33. The ME testified that Dr. Kearney's opinion implied Plaintiff had severe carpal tunnel syndrome. A.R. 107-10. But the ME disagreed with Dr. Kearney's assessment because no electrodiagnostic studies in the record confirmed the severity; no hand examination showed severe numbness of Plaintiff's hands; the persistent symptoms in Plaintiff's left hand after it had been released in 2012 were unusual and suspect; and a November 2015 examination showed ulnar nerve issues, not

carpal tunnel syndrome.  A.R. 108-12.  The ME concluded that the record supported mild to moderate carpal tunnel syndrome in Plaintiff's left hand but contained no evidence of right carpal tunnel.

After Plaintiff's left carpal tunnel release surgery in November 2012, treatment notes from January 2013 indicate that sensation and swelling were improving in his left fingers and elbow.  A.R. 638-41.  His right-hand exam revealed no tenderness, full composite flexion, and nearly all normal and negative findings.  A.R. 640.  An April 2013 examination revealed all normal and negative findings for both hands, including full composite flexion, normal sensation and stability, improved left carpal tunnel syndrome, and unchanged assessed right carpal tunnel syndrome.  A.R. 622-23.  Plaintiff was instructed to resume normal activity and full weight bearing.  A.R. 623.  In May 2015, Dr. Kearney's examination revealed normal inspection of both hands; no swelling, tenderness, or deformity in either hand; normal range of motion and stability in both hands; full scores on all neurological strength tests; nonpainful facet loadings maneuvers; and negative Spurling's and Tinnel's in both hands.  A.R. 844-45.

A September 2015 examination revealed abnormal sensation in Plaintiff's left hand, but also normal results for range of motion, stability, strength; full composite flexion; no tenderness; negative Thenar wasting, abductor pollicis, weakness, and hypothenar wasting; negative Tinnel's at carpal tunnel and Tinnel's at Guyon's canal; negative Dupuytren's cord and APB weakness.  A.R. 1022-23.  The examination included no findings about Plaintiff's right hand.

The record could support a finding that Plaintiff's left carpal tunnel syndrome largely improved after surgery on his left hand, with only mild to moderate symptoms remaining.  And the record supports the ALJ's finding that no evidence shows carpal tunnel syndrome in Plaintiff's right hand to the extent to which Dr. Kearney opined.  A single diagnosis does not require a finding of the severity of limitations in Dr. Kearney's opinion.

Thus, the record raises significant doubt regarding the severity of Plaintiff's hand and wrist condition. Were this the only basis for disability, a remand for further proceedings clearly would be warranted.

**B.    Neck and Back Conditions.**

As to Plaintiff's neck and back conditions, Dr. Amrani opined that Plaintiff could sit for six hours; stand and walk for two hours; and lift and carry less than ten pounds. Dr. Amrani also opined that it was medically necessary for Plaintiff to alternate between sitting, standing, and walking, and to rest 1-4 minutes between position changes. Plaintiff testified that he experiences constant pain and pressure in his neck and back, which is exacerbated by being on his feet or moving his head. A.R. 49-53. He also testified that he lays down more than once a day to get relief from his pain. A.R. 52-53.

At the hearing on October 7, 2015, the VE and Plaintiff's counsel had the following exchange:

> Q    In an eight hour day if an individual could sit for six hours, stand or walk for more than two, but less than three hours, would that be consistent with the range of sedentary work?
>
> A    Yes.
>
> Q    If we were to assume the Claimant's testimony, including the need to lay down during the day, would that preclude the performance of Claimant's past work or other work?
>
> A    Yes, it would.

A.R. 67.

With respect to Plaintiff's neck and back conditions, the Court finds no outstanding issues that must be resolved before a disability determination can be made, and no serious doubt that Plaintiff is disabled. As explained above, the medical record reflects a four-year history of reported pain, MRI testing, examinations, nerve blocks, nerve ablations, spinal injections, a spinal fusion, and referrals to pain management specialists. And if Dr. Amrani's opinion and Plaintiff's symptom testimony are credited as true, the VE's

testimony establishes that Plaintiff can perform no work.  The Court concludes that this is one of the rare cases where remand for an award of benefits is warranted.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded for an award of benefits**.  The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 11th day of January, 2019.

David G. Campbell
Senior United States District Judge